**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JONATHAN FENWICK,<br>*Plaintiff*,<br>v.<br>FREE2MOVE NORTH AMERICA, INC.,<br>*Defendant*. | Civil Action No. 25 - 3010 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jonathan Fenwick brings this action against Free2Move North America, Inc., alleging that Free2Move rented him a car it had erroneously reported as stolen, which led to his arrest and detention. ECF No. 1. Free2Move has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 8. For the reasons explained below, the court grants the motion in part and denies the motion in part.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following factual allegations drawn from Mr. Fenwick's complaint, ECF No. 1, are accepted as true for the purpose of evaluating the motion to dismiss, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In February 2024, Mr. Fenwick rented a vehicle owned by Free2Move, a car rental company, in the District of Columbia. ECF No. 1 ¶ 6; *see* ECF No. 11, at 2. While Mr. Fenwick was driving the car the next day in Baltimore, Maryland, he was pulled over by police because the headlamps on the car were inoperable. ECF No. 1 ¶¶ 7-8. The officers looked up the car's license plate number and learned that the vehicle had been reported stolen in July 2023 in Portland, Oregon. *Id.* ¶ 9. Mr. Fenwick alleges that "an agent or employee" of Free2Move had

"erroneously reported" the car as stolen and that Free2Move "never corrected the report or informed authorities in Portland, Oregon that the vehicle was not, in fact, stolen." *Id.* ¶¶ 18-19.

Police officers then conducted a "high-risk vehicle stop with multiple patrol cars and officers." *Id.* ¶ 10. They ordered Mr. Fenwick to exit the car and "placed him under arrest at gunpoint," which caused Mr. Fenwick to "experience significant fear for his life and safety." *Id.* Mr. Fenwick repeatedly told the officers that he had rented the car and was unaware that it had been stolen. *Id.* ¶ 11. He pointed out the Free2Move logo on the side of the car, offered to show officers the Free2Move app, and explained the process he had followed to rent the car. *Id.* ¶ 12. Officers contacted a phone number for Free2Move that they had obtained from the Portland police, but the number was not in service. *Id.* ¶¶ 13-14.

Mr. Fenwick was transported to the Baltimore Central Booking Intake Facility and charged with unauthorized removal of a motor vehicle. *Id.* ¶ 15. He was detained for twenty-one hours before being released on his own recognizance. *Id.* ¶ 16. While in custody, he was "stripped, fingerprinted, photographed," "held in a general population cell with six other individuals," and denied a shower. *Id*. Mr. Fenwick, who is vegan, was also denied a meal in accordance with his dietary needs and ate only sunflower seeds. *Id.* Prosecutors dropped all charges against him in April 2024. *Id.* ¶ 17.

Mr. Fenwick filed this action against Free2Move in September 2025, alleging that he has "incurred significant financial losses" and suffered "injuries to his reputation, emotional trauma, anxiety, mental anguish, [and] insomnia" as a result of his arrest, detention, and months spent trying to establish his innocence. *Id.* ¶ 23. In his complaint, he alleges negligence, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). *Id.* ¶¶ 24-33. Mr. Fenwick seeks $2 million in compensatory damages and $5 million in punitive

damages. *Id.* at 7. In late September 2025, Free2Move moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 8. Mr. Fenwick filed an opposition, ECF No. 11, and Free2Move did not file a reply.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## III. DISCUSSION

The court begins with a choice-of-law analysis before turning to the merits of Mr. Fenwick's claims. The court concludes that District of Columbia law governs Mr. Fenwick's claims and that Mr. Fenwick sufficiently raises a negligence claim but fails to state a claim for IIED or NIED.

### A. Choice of Law

As a threshold matter, the parties dispute which jurisdiction's law governs Mr. Fenwick's claims. Mr. Fenwick argues that District of Columbia law governs because he resides in the District and rented the vehicle from Free2Move here. ECF No. 11, at 4-5. Free2Move counters in a single sentence that Maryland law should apply because Mr. Fenwick's arrest occurred in Maryland, so he was injured, "if at all," in Maryland. ECF No. 8-1, at 3. Free2Move also advances that the outcome of Mr. Fenwick's claims is the same under either jurisdiction's law. *Id.* at 4 n.1, 5-10. The court concludes that District of Columbia law governs Mr. Fenwick's claims.

In a diversity action, a federal court applies the choice-of-law rules of the jurisdiction in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "Under District of Columbia law, the court must first determine if there is a conflict between the laws of the relevant jurisdictions." *Young Women's Christian Ass'n of the Nat'l Cap. Area, Inc. v. Allstate Ins. Co. of Can.*, 275 F.3d 1145, 1150 (D.C. Cir. 2002). A "true conflict" exists when "more than one jurisdiction has a potential interest in having its law applied and[] . . . the law of the competing jurisdictions is different." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51-52 (D.C. Cir. 2014) (internal quotation marks omitted) (quoting *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992)). If no conflict exists, District of Columbia law applies by default. *Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 27 (D.D.C. 2019). "If a conflict does exist, courts must employ a 'modified

governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute.'" *Id.* (quoting *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006)). The court must conduct a choice-of-law analysis for each claim. *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 741 F. Supp. 2d 222, 235 (D.D.C. 2010).

First, with respect to Mr. Fenwick's negligence claim, the parties do not identify any relevant conflict between District of Columbia and Maryland law. *See generally* ECF Nos. 8-1, 11. Under both jurisdictions' laws, negligence claims require showing that the defendant owed a duty to the plaintiff, the defendant breached that duty, and that the plaintiff's injury was caused by the breach. *See Poola v. Howard Univ.*, 147 A.3d 267, 289 (D.C. 2016); *Rowhouses, Inc. v. Smith*, 133 A.3d 1054, 1066 (Md. 2016). It is thus "unnecessary to engage in a conflict of laws analysis" for the negligence claim, *Young Women's Christian Ass'n*, 275 F.3d at 1150, and District of Columbia law applies by default, *see Krukas*, 376 F. Supp. 3d at 27. Indeed, Free2Move relies primarily on District of Columbia law in arguing that Mr. Fenwick's negligence claim fails. *See* ECF No. 8-1, at 4.

As for the IIED and NIED claims, a true conflict does exist. The elements of an IIED claim are the same under District of Columbia and Maryland law: a plaintiff must show extreme and outrageous conduct that intentionally or recklessly caused him severe emotional distress. *See Robertson v. District of Columbia*, 269 A.3d 1022, 1033 (D.C. 2022); *Caldor Inc. v. Bowden*, 625 A.2d 959, 963 (Md. 1993). But Maryland permits recovery for severe emotional distress only "if it results in physical injury," *Wheeling v. Selene Fin. LP*, 250 A.3d 197, 219 (Md. 2021) (quoting *Vance v. Vance*, 408 A.2d 728, 730 (Md. 1979)), whereas the District of Columbia has "long recognized that a plaintiff may recover damages for mental suffering unaccompanied by physical injury," *Parker v. Stein*, 557 A.2d 1319, 1322 (D.C. 1989). And with respect to NIED, Maryland

courts do not "recognize[] a distinct tort for the negligent infliction of mental distress," *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1065 (Md. Ct. Spec. App. 1986), whereas District of Columbia courts do, *see Blackwell v. Planet Fitness Franchising, LLC*, 356 A.3d 1251, 1260-62 (D.C. 2026). The court must accordingly decide whether the District of Columbia or Maryland has the more significant relationship to the parties' dispute to determine which jurisdiction's law applies to Mr. Fenwick's IIED and NIED claims. *See Washkoviak*, 900 A.2d at 180.

District of Columbia courts consider four factors in determining which jurisdiction has the more significant relationship to the case: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship is centered." *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995) (quoting Restatement (Second) of Conflict of Laws § 145(2) (A.L.I. 1971)). Here, the alleged injury occurred in Maryland, where Mr. Fenwick was arrested and detained. *See* ECF No. 1 ¶¶ 7-16. The parties contracted in the District of Columbia, *id.* ¶ 6, and it is unclear from Mr. Fenwick's complaint where the injury-causing conduct—Free2Move's allegedly false report that the rental car had been stolen and its failure to correct that report—occurred. Free2Move is incorporated in Delaware and operates in the District of Columbia, *id.* ¶ 4, and Mr. Fenwick is a resident of the District of Columbia, *id.* ¶ 3. Finally, the parties' relationship is not clearly centered in either jurisdiction, although the parties' "only . . . interaction existed in the District of Columbia," *Hawkins v. Wash. Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 104 (D.D.C. 2018), where Mr. Fenwick rented the car owned by Free2Move, ECF No. 1 ¶ 6. On balance, the factors weigh slightly in favor of the District of Columbia, but even if they were in equipoise between the District of Columbia and Maryland, the court would still apply District of Columbia law because it is the law of the forum

state. *See Washkoviak*, 900 A.2d at 182 ("Alternatively, because we cannot determine from the pleadings which jurisdiction has a greater interest in the controversy, in ruling on a motion to dismiss we must apply the law of the forum state, which in this case is the District of Columbia.").

**B. Negligence (Count I)**

To state a negligence claim under District of Columbia law, a plaintiff must show "(1) that the defendant owed a duty to [him], (2) a breach of that duty, and (3) an injury to [him] that was proximately caused by the breach." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011) (en banc).[1] Free2Move argues that the parties' contractual relationship bars Mr. Fenwick's negligence claim. ECF No. 8-1, at 4. At this early stage of the proceeding, the court disagrees.

In seeking dismissal, Free2Move relies on *Choharis v. State Farm Fire & Casualty Co.*, 961 A.2d 1080 (D.C. 2008). *See* ECF No. 8-1, at 4. There, the plaintiff alleged that an insurance company had, among other things, made negligent and fraudulent misrepresentations about its policy for short-term housing and the absence of mold in the plaintiff's insured property. *Choharis*, 961 A.2d at 1084-86, 1088-90. The D.C. Court of Appeals held that these misrepresentations and "any duty with respect thereto related directly" to the company's obligations "provided for in the [parties' insurance] contract." *Id.* at 1089. Consequently, any injuries the plaintiff incurred from the company's misstatements were likely "compensable under contract principles," and the plaintiff could not bring independent tort claims to recover for those injuries. *Id.* at 1090.

---

[1] As noted, the same factors apply under Maryland law. *See supra* p. 5.

In so holding, the *Choharis* Court did not foreclose all tort claims that arise in connection with a contractual relationship. Instead, it explained that "a cause of action that could be considered a tort independent of contract performance is a viable claim" because, in such a case, "the injury to the plaintiff [is] 'an independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted-for benefit.'" *Id.* at 1089 (quoting *Tate v. Aetna Cas. & Sur. Co.*, 253 S.E.2d 775, 777 (Ga. Ct. App. 1979)). Accordingly, a plaintiff can raise a tort claim when there are (1) "facts separable from the terms of the contract upon which the tort may independently rest" and (2) "a duty independent of that arising out of the contract itself." *Id.*

Free2Move argues that Mr. Fenwick cannot establish *Choharis*'s second prong because "[t]here exists no connection between the parties outside the rental contract." ECF No. 8-1, at 4. Mr. Fenwick responds that he has plausibly alleged that Free2Move owes him a "duty . . . flow[ing] from considerations other than the contractual relationship." ECF No. 11, at 6 (emphasis omitted) (quoting *Choharis*, 961 A.2d at 1089). Specifically, Mr. Fenwick alleges that Free2Move "had a duty to properly investigate and report instances of vehicle theft and to correct the same [because] it had actual or constructive knowledge that its vehicle was not actually stolen.'" ECF No. 1 ¶ 24; *see id.* ¶¶ 18-19 (alleging that "Free2Move erroneously reported its vehicle stolen, knowing full well that the vehicle was in fact not stolen and was being used [by its] customers," and that it "never corrected the report").[2] In essence, Mr. Fenwick alleges that by

---

[2] As Mr. Fenwick recounts, several jurisdictions have embraced his theory of negligence. *See* ECF No. 11, at 6-8 (first citing *Henry v. Hertz Corp.*, No. 08-CV-483, 2009 WL 10675505, at *5 (D.N.M. Sep. 30, 2009) (holding that a rental car company "has a duty to its customers to ensure that a vehicle that it rents out is not [reported as stolen] before it leaves the lot . . . if it has actual or constructive notice that the vehicle has been reported stolen"); then citing *Badr v. City of San Ramon*, No. 21-CV-9575, 2022 WL 2341153, at *2-4 (N.D. Cal. Apr. 11, 2022) (similar); then

(*continued on next page*)

taking "an affirmative act" in reporting its car stolen, Free2Move was "under a duty to [its customers] to exercise [reasonable] care . . . to protect them against an unreasonable risk of harm . . . arising out of the act." Restatement (Second) of Torts § 302 cmt. a (A.L.I. 1977); *see* ECF No. 1 ¶¶ 24-25; *see also Freyberg v. DCO 2400 14th St., LLC*, 304 A.3d 971, 978 (D.C. 2023) ("[W]here there is an affirmative act which affects the interests of another, there is a duty not to be negligent with respect to the doing of the act." (internal quotation marks and citation omitted)).[3]

At this stage of the proceeding—where Free2Move has yet to produce the contract that it claims displaces Mr. Fenwick's negligence claim—Mr. Fenwick has the better argument. Under District of Columbia law, when the defendant owes a duty to the plaintiff, the "parties are charged with the duty to act with reasonable care under the circumstances." *Wash. Metro. Area Transit Auth. v. Barksdale-Showell*, 965 A.2d 16, 24 (D.C. 2009). It may well be that the parties have contracted around the duties Mr. Fenwick claims Free2Move owed him, but at the motion-to-dismiss stage, the court cannot reject Mr. Fenwick's negligence claim as foreclosed by a contract that is not before the court. Accordingly, the court concludes that Mr. Fenwick may proceed with Count I.

---

citing *Bramon v. U-Haul, Inc.*, 945 S.W.2d 676, 683 (Mo. Ct. App. 1997) (similar); and then citing *Kalt v. Dollar Rent-a-Car*, 422 So. 2d 1031, 1033 (Fla. Dist. Ct. App. 1982) (similar)); *see also Firstley v. Bill Watson Ford, Inc.*, 268 So. 2d 314, 317 (La. Ct. App. 1972) (similar).

[3] Other courts have reached similar conclusions in analogous circumstances. *See, e.g.*, *Pool v. City of Oakland*, 728 P.2d 1163, 1176 (Cal. 1986) (holding that a grocery store can be liable to a customer it erroneously accuses of using counterfeit bills); *Johnson v. Supersave Mkts., Inc.*, 686 P.2d 209, 211-12 (Mont. 1984) (similar), *overruled in part on other grounds by Jacobsen v. Allstate Ins. Co.*, 215 P.3d 649, 664 (Mont. 2009); *Collins v. City Nat. Bank & Tr. Co. of Danbury*, 38 A.2d 582, 583-84 (Conn. 1944) (holding that a bank can be liable to a customer it erroneously reports for writing a bad check); *Mouse v. Cent. Sav. & Tr. Co.*, 167 N.E. 868, 871 (Ohio 1929) (same); *Weaver v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 380 P.2d 644, 647-49 (Cal. 1963) (same); *Woody v. Nat'l Bank of Rocky Mount.*, 140 S.E. 150, 154-55 (N.C. 1927) (same).

### C. Intentional Infliction of Emotional Distress (Count II)

To bring an IIED claim under District of Columbia law, a plaintiff must allege "(1) extreme and outrageous conduct by the defendant that (2) intentionally or recklessly (3) caused the plaintiff severe emotional distress." *Robertson*, 269 A.3d at 1033. "The requirement of outrageousness is not an easy one to meet." *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 (D.C. 1994). "The conduct alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 995 (D.C. Cir. 2014) (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)). IIED has been described as "a very narrow tort with requirements that 'are rigorous[] and difficult to satisfy.'" *Hargraves v. District of Columbia*, 134 F. Supp. 3d 68, 93 (D.D.C. 2015) (quoting *Snyder v. Phelps*, 562 U.S. 443, 464-65 (2011) (Alito, J., dissenting)). Free2Move argues that Mr. Fenwick fails to plead extreme and outrageous conduct or severe emotional distress. ECF No. 8-1, at 4-7. The court agrees.

Mr. Fenwick alleges in his complaint that Free2Move's "false allegations to law enforcement that its vehicle was stolen, when it knew that it was not, amounts to extreme and outrageous conduct." ECF No. 1 ¶ 27. He argues that "it is hardly far-fetched to imagine that an average member of the community would find [Free2Move's] failure to correct its report of a stolen vehicle and its resulting exposure of innocent customers to arrest, incarceration, and criminal charges to be outrageous, indecent, and reckless." ECF No. 11, at 11-12. To be sure, some courts applying District of Columbia law have held that "false reporting causing police action is sufficiently outrageous to state a claim for IIED." *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 264 (D.D.C. 2018) (denying a motion for summary judgment where the plaintiffs alleged that a defendant "knowingly filed a false police report[] and then failed to retract that report when given

an opportunity"); *see, e.g.*, *District of Columbia v. Tulin*, 994 A.2d 788, 801 (D.C. 2010) (affirming a jury verdict where the defendant officer made a false statement that the plaintiff had caused a car accident and directed a subordinate to detain the plaintiff); *Pitt v. District of Columbia*, 491 F.3d 494, 505-06 (D.C. Cir. 2007) (affirming a jury verdict where the defendant officer made false statements and "tampered with evidence in an attempt to link [the plaintiff] to the scene of [a] crime"); *see also Amobi*, 755 F.3d at 995-96 (holding that a jury could find extreme and outrageous conduct where correctional officers had given incriminating reports to a police officer investigating a prison assault but had withheld exculpatory reports). Indeed, the D.C. Court of Appeals has held that "[w]hile mistakenly calling the police and informing them that someone is [committing a criminal act] [may not be] sufficiently outrageous conduct" to support an IIED claim, "even if those statements are false, . . . intentionally or recklessly doing so may rise to that level." *Carter v. Hahn*, 821 A.2d 890, 895 (D.C. 2003) (second and third alterations in original) (internal quotation marks and citation omitted).

Here, however, Mr. Fenwick does not allege that Free2Move made false reports to police about him in particular, *cf. Sherrod*, 334 F. Supp. 3d at 265-66; *Carter*, 821 A.2d at 895, or that the company was involved in directly causing his arrest, *cf. Tulin*, 994 A.2d at 801. While the alleged facts are troubling, Free2Move's allegedly erroneous report to the Portland police that one of its own vehicles had been stolen is materially different from falsely informing the police that an individual had committed a crime. *Cf. Lyles v. Micenko*, 404 F. Supp. 2d 182, 187 (D.D.C. 2005) (concluding that "initiating a complaint with the police . . . , even if false, is not conduct that rises to the level of 'outrageousness'"). The court thus cannot conclude that Free2Move's alleged initial report of theft and subsequent failure to correct that report constitute "atrocious[] and utterly intolerable" conduct. *Amobi*, 755 F.3d at 995 (quoting *Bernstein*, 649 A.2d at 1075).

Mr. Fenwick also fails to plead severe emotional distress. Severe emotional distress "requires a showing beyond mere 'mental anguish and stress,'" *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1261 (D.C. 2016) (quoting *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013)), and must be "so acute . . . that harmful physical consequences [are likely] to result," *Hargraves*, 134 F. Supp. 3d at 93-94 (alterations in original) (quoting *Futrell v. Dep't of Lab. Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003)). Mr. Fenwick alleges that he "suffered severe emotional distress," "incurred significant financial losses," and "suffered, and will continue to suffer, injuries to his reputation, emotional trauma, anxiety, mental anguish, [and] insomnia." ECF No. 1 ¶¶ 22-23. These "conclusory assertions of 'emotional distress[] and mental anguish' cannot support an IIED claim." *Chen v. ICS Protective Servs.*, No. 23-CV-1253, 2024 WL 4103700, at *4 (D.D.C. Sep. 5, 2024) (alteration in original) (quoting *Daniels v. District of Columbia*, 894 F. Supp. 2d 61, 68 (D.D.C. 2012)); *see G'Sell v. Carven*, 724 F. Supp. 2d 101, 110 (D.D.C. 2010) (dismissing an IIED claim under District of Columbia law where the plaintiffs "alleged only that they 'suffered, and will continue to suffer, great fear, emotional trauma and humiliation'" (citation omitted)).

Mr. Fenwick relies on *Chen v. District of Columbia*, 256 F.R.D. 267 (D.D.C. 2009), where the court concluded that the plaintiff had adequately pleaded severe emotional distress after a violent brush with police. *Id.* at 273; *see* ECF No. 11, at 12. But in *Chen*, the plaintiff alleged that she had "developed an abiding fear of police officers," "become scared to venture outside at night," and "experienced emotional distress so severe that she . . . had difficulty at work." 256 F.R.D. at 273. Mr. Fenwick fails to allege any such emotional consequences here. And while Mr. Fenwick attempts to distinguish *Wood v. Neuman*, 979 A.2d 64 (D.C. 2009), *see* ECF No. 11, at 12, the plaintiff in *Wood* alleged even more severe and specific examples of emotional distress

than Mr. Fenwick has, and still failed to adequately plead IIED, *see* 979 A.2d at 78 (alleging that the plaintiff was "constantly crying and almost sleepless, was shaken at her arrest, and was embarrassed at having been made out to be a 'pariah' in the neighborhood" (citation omitted)). Mr. Fenwick thus fails to satisfy the first and third elements of an IIED claim, and the court dismisses Count II.

**D. Negligent Infliction of Emotional Distress (Count III)**

Under District of Columbia law, a plaintiff may allege NIED under either a "zone of physical danger" or "special relationship" theory. *Blackwell*, 356 A.3d at 1260 (internal quotation marks omitted); *see Agrawal ex rel. A.N. v. Potomac Sch.*, No. 21-CV-2460, 2022 WL 4245476, at *4-5 (D.D.C. Sep. 15, 2022). Mr. Fenwick proceeds only under the latter theory. *See* ECF No. 1 ¶ 31 ("Free2Move undertook an obligation to [Mr. Fenwick] that implicated his emotional wellbeing."); ECF No. 11, at 9-10. The special-relationship test requires a plaintiff to show that (1) "the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being"; (2) "there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff"; and (3) "negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *Hedgepeth*, 22 A.3d at 810-11.

Mr. Fenwick fails to allege that he had a special relationship with Free2Move or that Free2Move undertook any obligation implicating his emotional well-being. Mr. Fenwick contends that Free2Move undertook such an obligation by failing to correct the reported theft before renting the vehicle to him. ECF No. 1 ¶ 31. But the parties' business-customer relationship is far from the kind of special relationship supporting an NIED claim. *See Hedgepeth*, 22 A.3d at 813 ("[M]ost cases claiming negligent infliction of emotional distress have arisen—and we think

will continue to arise—in the context of doctor-patient relationships."); *Blackwell*, 356 A.3d at 1262 (holding that "the relationship . . . between [the plaintiff] as a customer, and [the defendant] as the operator of a business that offers exercise facilities to the public, is not the kind of relationship that can give rise to NIED liability"); *cf. Islar v. Whole Foods Mkt. Grp., Inc.*, 217 F. Supp. 3d 261, 268 (D.D.C. 2016) (concluding that under District of Columbia law, an "arm's length, supervisor-employee relationship" is not a "special relationship"). Indeed, the D.C. Court of Appeals has held that the "duty of care owed by [a] business invitor to invitee" does "not . . . necessarily implicate the emotional well-being of the parties." *Hedgepeth*, 22 A.3d at 812 n.39. Here, Free2Move rented a vehicle to Mr. Fenwick, and "neither the purpose of the relationship nor [Free2Move's] undertaking [was] to care for [Mr. Fenwick's] well-being." *Id.* at 815.

Additionally, for the reasons stated above, *see supra* pp. 12-13, Mr. Fenwick also fails to plead emotional distress severe enough to state an NIED claim. The court accordingly dismisses Count III.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss, ECF No. 8, is **GRANTED** as to Counts II and III, but the motion is **DENIED** as to Count I. It is

further **ORDERED** that Defendant shall file an answer to Count I on or before October 13, 2026. *See* Fed. R. Civ. P. 12(a)(4)(A).

LOREN L. ALIKHAN
United States District Judge

Date: September 28, 2026